IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOUGLAS GOLDHABER** | ) | NO. |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION LAW |
| | ) | |
| **WILLIAM HIGGINS, BRIAN** | ) | |
| **CLARK, KEITH BOWSER.** | ) | |
| **MICHAEL GEORGE, KENNETH** | ) | |
| **BENTON, PAUL WYPIJEWSKI** | ) | |
| **BRADLEY E. HERSHEY, AND** | ) | |
| **THE BEDFORD COUNTY** | ) | |
| **PRISON BOARD,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendants** | ) | |

## COMPLAINT

### INTRODUCTORY STATEMENT

1. This is a civil rights complaint brought by an attorney who alleges he was the victim of an unlawful agreement carried out by a judge (George), a district attorney (Higgins), and certain other public officials (Clark, Bowser, Benton, Hershey, and Wypijewski) to retaliate against him for unlawful reasons, chief of which was his decision to defend himself in a court of law. A State Trooper (Hershey) indicated that he and Higgins were going to "get" Goldhaber. A matter of weeks later attorney Goldhaber was followed by PSP Trooper Hershey and arrested for DUI. The reasons to "get" Goldhaber were based upon his advocacy, particularly as a public defender,

1

for the criminally accused. Goldhaber also alleges he suffered retaliation because he criticized Higgins for what he believed to be unethical and unlawful conduct. Bedford County Judge Daniel Howsare recused himself in plaintiff's case and he was tried and sentenced before the defendant Michael George of Adams County sitting before a Bedford County jury. The defendants unlawfully agreed, under badge of state authority, to manipulate the powers of their various offices to insure that Douglas Goldhaber would be incarcerated and do hard time in a prison despite an appropriate sentencing order from George which included the right to work-release and specifically did not preclude house arrest. George would later indicate that he intentionally allowed Goldhaber to be incarcerated for 15 day beyond his sentence because of his "trick in Cambria County". Certain defendants also agreed and acted unlawfully to extend the incarceration of Mr. Goldhaber in prison for 15 days after the Commonwealth jurisdiction over him as a prisoner had plainly and clearly expired.

Judge George unlawfully took administrative actions to intentionally commit certain omissions which were not judicial functions and he therefore does not enjoy judicial immunity from suit in this action. The Bedford County Prison Board is alleged to have established a policy custom and practice under the circumstances of this case which were

2

intentionally aimed at depriving plaintiff of his 1st, 4th, 8th, and 14th amendment rights as were the individual human defendants.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to federal law to hear causes brought under the remedial statute 42 USC §1983 via 28 USC §1331 and 28 USC §1343(a)(3) and (4) for the violation of federally guaranteed rights.

3. Jury trial is demanded.

4. Punitive damages are demanded of the seven individual human (hydrocarbon organisms) defendants (non-entity defendants i.e. Bedford County, a secular municipal creature, although a person for purposes of 1983, cannot be held liable for punitive damages under current law) because their misconduct was particularly egregious.

5. Venue is properly in the Federal District Court for the Western District of Pennsylvania (Johnstown Office) because the parties, witnesses, the facts, and evidence are predominantly located in Bedford County Pennsylvania which is adjacent to Cambria County where Johnstown is located.

## OPERATIVE FACTS

6. On or about March 2, 2005 the plaintiff was found guilty in a jury trial in Bedford County Pennsylvania of DUI charges.

7. The presiding judge at plaintiff's Bedford County trial was Adams' County Judge Michael George, a defendant here.

8. Plaintiff's original sentencing order (April 2005) specifically provided that plaintiff could serve his sentence under work-release conditions. The order did not prevent or bar house arrest to facilitate work-release. A later sentencing order (August 11, 2005) repeated this provision of the order but was however, an artifice, written by Judge George to effectuate an unlawful plan entered into by George, Higgins, and Clark to undo lawful efforts by the plaintiff to be housed in Cambria County permit his participation in work-release since the defendants had conspired to deny him the opportunity to be housed at the Bedford County prison. The defendant's unlawful actions have been disclosed by the following undisputed facts:

   a. The original sentencing order by Judge George was dated in April 2005. It provided for work-release. The prison board was aware of this order.

   b. When plaintiff was originally incarcerated at the Bedford County Prison Clark refused to house him there claiming it would be unsafe for him there and sent him to Clinton County Prison. The Prison Board was aware of, and ratified, this action.

   c. Because of the vast distance between plaintiff's office and Clinton County Prison plaintiff could not participate in any work-release program.

4

Consequently his attorney received permission from Clark to have plaintiff sign a waiver (holding the Bedford County Prison and its officials harmless should he be injured) in return for his being permitted to stay at BCP and thus participate in a work release program.

   d. The defendant Clark expressly agreed to this procedure.

   e. When Goldhaber proceeded to effectuate this plan shortly thereafter, Clark refused and said that he had "changed his mind".

   f. Plaintiff's wife and attorney then engaged in a self-help plan to move plaintiff to Cambria County Prison from the Clinton County Prison with the full knowledge and awareness of Clark, Higgins, George and officials in Bedford County, to include the Prison Board. In fact Bedford County personnel were paid to transport the plaintiff from the Clinton County Prison to Cambria County Prison where plaintiff had pre-paid his room and board.

   g. Plaintiff then succeeded, by virtue of a lawful motion filed in the Cambria County Courts, in procuring an order from Judge Long permitting him to participate in the Cambria County work release program and further, to be under house arrest. All costs were pre-paid by the plaintiff. At no time did the plaintiff keep any information from any Bedford County official or Judge George about what he was doing or why, which quite frankly was plain and obvious for all to see and was also in total accordance with the law and all Rules of Court. Worthy of note is that Higgins had recused himself

from Goldhaber's action from the very beginning, but had by now unlawfully immersed himself in Goldhaber's affairs to the fullest extent possible even making press statements regard the aforementioned order which was never hidden or kept from any official or entity in Bedford County.

   h. Within days, without any hearing or court order, Bedford County snatched the plaintiff from Cambria County Prison and transported him to Bedford County Prison where he was placed in the general prison population. Judge George, DA Higgins, Warden Clark and the Bedford County Prison Board were all aware of, approved of, and participated in this unlawful plan to vindictively and unlawfully injure the plaintiff.

   i. Shortly thereafter the plaintiff was driven, at Bedford County's expense, to also be housed at Bedford County's expense, in the Adams County Prison (ACP) (without any hearing or order of court) for the sole purpose of retaliating against the plaintiff because he made lawful motions (exercised his First Amendment right to petition for redress ) before the Cambria County Courts, and because he defended himself in court. The defendant's unlawful retaliation effectively denied Goldhaber any opportunity to participate in any work-release program because of the distance from the Adams County Prison to the Bedford County Prison all of which was known to the defendants and was intentionally planned by them

6

in order to hatefully punish and harm the plaintiff. The purpose of the defendant's unlawful plan and actions was to defeat plaintiff's lawful desire, as per his original sentencing order, to facilitate a work release program so that he could support his family, represent his client's, and dutifully serve his sentence.

   j. Once at the Adams County Prison plaintiff was put into solitary confinement despite his not violating any prison rule or behaving improperly in any way. Plaintiff was denied any library privileges. Plaintiff was denied access to see or talk with his attorney Carol Rose Esq. who attempted to reach plaintiff but was turned away by the Prison after traveling there from Bedford by the defendant Wypijewski. Wypijewski ordered that plaintiff was to be fed through a slot in his cell door, was to be denied any exercise, was not allowed any visitors, or to see his attorney, and was permitted one opportunity for 15 minutes to shower and one opportunity at approximately 6 a.m. to 6:30 a.m. to make one 15 minute telephone call. Plaintiff was forced to sign a hold harmless waiver to escape from solitary confinement.

   k. During his incarceration plaintiff was unlawfully and unreasonably denied the opportunity to meet with counsel because he had filed a nunc pro tunc motion to appeal, which his trial all year had missed and also because he had filed other actions in the appellate courts and had openly filed for work-release

7

l. Plaintiff was incarcerated for 15 days beyond his lawful sentence by the defendant George and the defendant Bowser because the defendant George considered his lawful motion before the Cambria County court to be a "trick". Goldhaber has never engaged in any "tricks" and Judge George is fully aware of that fact.

9. On or about September 9, 2005 the Honorable Gérard Long, President Judge of the Court of Common Pleas of Cambria County Pennsylvania (Plaintiff was housed in the Cambria County Prison due to the efforts of his wife and attorney with the full knowledge of the Bedford County prison board) had granted Mr. Goldhaber's request for house arrest based on Judge George's August 11 order which permitted work release of which house arrest is a lawful and proper part. Goldhaber was totally within his rights something the defendants have never questioned simply because they can't.

10. Upon information and belief, the defendants Higgins, Clark, and Bowser, in concert with Judge Michael George of Adams County (judges enjoy an extremely high level of immunity which discourages suit for civil rights abuses unless their activities are purely administrative) conspired to take the plaintiff to Adams County prison as a way to ensure that he would do "hard time" and not be able to benefit from Judge George's own sentencing order which permitted work-release(and arguably of course, house arrest).

8

11. Defendant Wypijewski, the deputy Warden of the Adams County prison participated with the above defendants in an unlawful conspiracy to house the plaintiff in the Adams County Jail so that he could not benefit from any work-release/house arrest provisions of Judge George's August 11, 2005 order.

12. The defendants accomplished this goal by and through the overt omissions of the defendant Bowser who intentionally did not fill out and deliver the appropriate paperwork even though he had been contacted by a number of persons asking what explanation there was for holding up plaintiff's release.

13. Upon information and belief the defendants George and Higgins were and are the main coordinators of the unlawful deprivations of the 1st, 4th, 8th, and 14th Amendment Rights the Plaintiff Has Suffered. Bowser participated with George in violating plaintiff's 8th and 14th amendment rights. Ironically Bedford County's Prison Board was involved in the plan during the entire process even agreeing to let Bedford County pay for Goldhaber's incarceration at a site distant enough to ensure that he could not take advantage of a right to at least try to participate in work-release.

14. Plaintiff has a First Amendment right not to suffer retaliation for exercising his right to petition for a redress of grievances. This right was implicated inter alia when the plaintiff petitioned the Cambria County Court

9

for work-release/house arrest, and when he lawfully requested coordination of the Bedford County probation office to facilitate that order. He also has a right to access and talk to an attorney along with an 8th amendment right to be free of cruel and unusual punishments. In addition the defendants violated the plaintiff's equal protection of the law's rights by imposing on equal excessively harsh prison conditions upon the plaintiff.

15. The plaintiff has a 4th Amendment right not to be unlawfully seized out of retaliation for exercising his First Amendment rights and inter alia, not to be taken into custody and moved about in violation of an existing court order for unlawful reasons.

16. Plaintiff has an 8th Amendment right not to be lodged unlawfully in a prison by state officials who lack any jurisdiction or authority to keep him there against his will as they did in this case. Such misconduct constitutes cruel and unusual punishment.

17. Plaintiff has a 14th Amendment right to enjoy the benefits of liberty and not to be deprived of that liberty without due process of law as occurred in this case. The defendants here unlawfully agreed to act in an unlawful manner to deny plaintiff the right to enjoy the benefits of a lawful sentence of a Common Pleas Court and further to keep him incarcerated in prison beyond the terms of his sentence and to deny him access to his attorney, among other unlawful actions.

18. On or about the last week or so of May 2006, through the beginnings of the first week of June 2006, the defendant Benton, a Pennsylvania State Police Trooper, acting expressly upon the orders of, and at the direction of, the defendant Higgins, began conducting a bogus investigation designed specifically to create circumstances such that the plaintiff would be charged with violating the terms and conditions of his probation as a way to cause him to go back to prison.

19. The defendant Higgins was, and is, motivated to use and abuse his power as a state official to harm the plaintiff in retaliation for the plaintiff speaking out on matters of public concern as a citizen, because the plaintiff constructively criticized Higgins for breaking the law and fraudulently abusing elderly citizens whose money he is believed to have taken, and also for conducting himself improperly in front of the Bedford County courts which have reported him in the past for disciplinary violations i.e. for lying to the court (the Honorable Daniel Howsare reported Mr. Higgins for misconduct)

20. Benton, acting at the behest of Higgins, along with Bowser, are attempting to distort facts and law to create false allegations and initiate criminal actions against the plaintiff in a matter where a former employee of plaintiff's may have acted incorrectly. More specifically Benton has told attorney Carol Rose Esq. that he intends to charge the plaintiff was some

11

sort of wrongdoing because the plaintiff has indicated that he did not "want to talk" to Benton.

21. Benton's claims are false, and Benton knows they are false. Plaintiff never refused to talk to Mr. Benton and in fact spoke to him over the telephone in the presence of Bowser. Benton knows full well that plaintiff has no obligation to even talk to him. But Benton also knows that by charging plaintiff with a crime that he can have plaintiff's probation revoked causing him to be put back in prison. Upon information and belief this is the unlawful conspiratorial design of Mr. Higgins and the defendant Benton. Benton has stated that he intends to file charges against plaintiff and that after he does, the head prosecutor of Bedford County the defendant District Attorney Higgins will hold a press conference where he will invite the public to come in and share information about the plaintiff which, reminiscent of unlawful and immoral prosecutorial tactics out of the past, the defendant Higgins would then investigate. These unlawful actions are legally and morally repugnant and constitute an unlawful civil conspiracy under the law of 42USC 1983 to violate the plaintiff's federally guaranteed rights and further constitute violations of Pennsylvania tort law just as the aforementioned facts indicate violations of the disciplinary codes to which attorneys and judges are subject.

22. The defendant's misconduct has exceeded mere violations of the applicable federal and state civil law. The defendants have behaved criminally in violation of 18 Pa C.S.A. § 5301 prohibiting official oppression. Therefore plaintiff alleges that these defendants have used the criminal process and their unique access to it as elected and appointed officials to abuse and violate the plaintiff's right to substantive and procedural due process of law and that the actions of these defendants have been arbitrary and capricious to such an extreme degree as to shock the conscience.

Wherefore the plaintiff demands judgment of the defendants jointly and severally for the deprivation of his federally guaranteed rights and for conspiring to violate his federally guaranteed rights as described in this complaint along with damages for humiliation and embarrassment, for pain and suffering, for emotional trauma, lost wages and earnings in an amount has yet to be determined, fees, costs, attorney's fees, and such other relief as the court may deem appropriate to include damages as described above for the violations of plaintiff's rights under Pennsylvania tort law.

            Respectfully Submitted,

            ***Bailey & Ostrowski***

    By:    <u>S/Don Bailey Esquire</u>
            4311 N. 6th Street
            Harrisburg, PA 17110
            717.221.9500

June 7, 2006