## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS GOLDHABER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 06-134J** |
| | ) |
| **WILLIAM HIGGINS, BRIAN CLARK,** | )    **JUDGE GIBSON** |
| **KEITH BOWSER, MICHAEL** | ) |
| **GEORGE, PAUL WYPIJEWSKI, and** | ) |
| **the BEDFORD COUNTY PRISON** | ) |
| **BOARD,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on the Motion to Dismiss/Motion to Strike filed by

Defendants William Higgins ("Higgins"), Brian Clark ("Clark"), Keith Bowser ("Bowser"), Paul

Wypijewski ("Wypijewski"), and the Bedford County Prison Board ("Board") (Doc. No. 47), the

Motion to Dismiss filed by Defendant Judge Michael George ("Judge George") (Doc. No. 50), and the

Motion to Vacate Protective Order from Discovery and Case Management filed by Plaintiff Douglas

Goldhaber ("Goldhaber") (Doc. No. 58).

### II. BACKGROUND

On June 7, 2006, Goldhaber commenced this action against the above-named Defendants, and

Kenneth Benton ("Benton") and Bradley E. Hershey ("Hershey"), alleging violations of the First,

Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as violations of

1

Pennsylvania law. Doc. No. 1. On August 22, 2006, after three motions to dismiss had been filed, Goldhaber amended his complaint. Doc. No. 17. The motions to dismiss were subsequently refiled. Doc. Nos. 25, 28 & 30. In a Memorandum Opinion dated September 28, 2007, the Court dismissed all claims arising under the Fourth and Eighth Amendments, as well as the Fourteenth Amendment claims arising under the Due Process Clause (except with respect to the Due Process Clause's incorporation of the Petition Clause of the First Amendment). *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 709-28 (W.D. Pa. 2007). The claims arising under Pennsylvania law were also dismissed. *Id.* at 728. The Court dismissed any and all claims asserted against Benton and Hershey, who are no longer parties to this case. *Id.* at 729-30. Goldhaber's claims under the Petition Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment were permitted to proceed against Higgins, Clark, Bowser, Wypijewski, and the Board. *Id.* at 709-23. It was determined that Clark, Bowser and Wypijewski were not entitled to qualified immunity (at least at that stage). *Id.* at 723-24. Goldhaber was ordered to file a more definite statement in order to facilitate the Court's resolution of Judge George's claim of absolute immunity. *Id.* at 706-709. Judge George's motion to dismiss was denied without prejudice, pending the filing of a more definite statement by Goldhaber. *Id.* at 731-32. Because Goldhaber was ordered to file a more definite statement, the Court determined that a motion to strike filed by the Defendants was moot. *Id.* at 729.

In accordance with the Court's order, Goldhaber filed a more definite statement on February 8, 2008. Doc. No. 42. Higgins, Clark, Bowser, Wypijewski and the Board filed a Motion to Dismiss/Motion to Strike on February 15, 2008. Doc. No. 47. Judge George filed his renewed Motion to Dismiss on March 10, 2008. Doc. No. 50. On February 22, 2008, Goldhaber filed a Motion to Vacate Protective Order from Discovery and Case Management. Doc. No. 58. This Memorandum Opinion

2

addresses each of these motions.

Because this matter comes before the Court on motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations contained in Goldhaber's Second Amended Complaint are assumed to be true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ____, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). Goldhaber is a criminal defense attorney who maintains his practice in Bedford County, Pennsylvania. Doc. No. 42, ¶ 7. His career includes previous service as the Public Defender for Bedford County. *Id.* At some point in late 1999 or early 2000, Higgins was hired as an Assistant District Attorney for Bedford County. *Id.* ¶ 8. Goldhaber and Higgins frequently interacted with each other, and their relationship was generally amicable. *Id.* ¶¶ 9-14. In November 2003, Higgins was elected to be the District Attorney for Bedford County. *Id.* ¶ 15. Shortly thereafter, the relationship between Goldhaber and Higgins deteriorated, and animosity developed. *Id.* ¶¶ 16-24.

On April 9, 2004, Goldhaber was arrested for driving after imbibing.[1] *Id.* ¶ 6. Because a conflict of interest precluded the Bedford County District Attorney's Office from being involved with the case, the Pennsylvania Attorney General's Office prosecuted Goldhaber. *Id.* ¶ 25. At a preliminary hearing held July 19, 2004, the charges against Goldhaber were permitted to proceed. *Id.* ¶ 26. On August 6, 2004, Judge Daniel Lee Howsare, the President Judge of the Pennsylvania Court of Common Pleas of Bedford County, recused himself from participating in Goldhaber's case. *Id.* ¶ 27. Judge Kevin A. Hess, of the Pennsylvania Court of Common Pleas of Cumberland County, was appointed to preside over the case. *Id.* However, on January 25, 2005, Judge Howsare entered an order terminating Judge

---

[1]Chapter 38 of Pennsylvania's Motor Vehicle Code is entitled "Driving After Imbibing Alcohol or Utilizing Drugs." The applicable provision provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 PA. CONS. STAT. § 3802(a)(1).

3

Hess from presiding over the case. *Id.* ¶ 28. Instead, Judge George, of the Pennsylvania Court of Common Pleas of Adams County, was appointed to preside over Goldhaber's case. *Id.*

Higgins attempted to testify at Goldhaber's trial, but was not permitted to do so. *Id.* ¶ 29. On March 2, 2005, after a jury trial, Goldhaber was convicted of driving after imbibing. *Id.* ¶ 30. Sentencing was scheduled for April 22, 2005. *Id.* Judge George sentenced Goldhaber to a term of incarceration for no less than ninety days nor more than one day less than five years at the Bedford County Correctional Institution. *Id.* ¶ 31. The terms of the sentence permitted Goldhaber to be on work release. *Id.*

On August 5, 2005, Judge George revoked Goldhaber's bail because his attorney failed to file an appeal. *Id.* ¶ 33. Judge George's order required Goldhaber to surrender himself to the Bedford County Correctional Institution by 6:00 P.M. on August 9, 2005. *Id.* ¶ 34. Goldhaber did not learn of this order until the late afternoon hours of August 8, 2005. *Id.* Higgins obtained a copy of the order and tried to file it with the Bedford County Clerk of Courts Office. *Id.* ¶ 35. He encouraged members of the Pennsylvania State Police to hunt Goldhaber down on August 8, 2005, even though Goldhaber had until the next day to turn himself in. *Id.* Higgins also contacted the *Bedford Gazette* in order to request that a photographer be present when Goldhaber surrendered himself. *Id.*

Goldhaber reported to the Bedford County Correctional Institution on August 9, 2005. *Id.* ¶ 37. By that time, Higgins, Clark, Bowser and the Board had already made the decision to house Goldhaber outside of Bedford County. *Id.* ¶ 38. Clark was the warden of the Bedford County Correctional Institution, and Bowser was Bedford County's chief probation officer. *Id.* ¶ 1. When Goldhaber arrived at the Bedford County Correctional Institution, he was immediately transported to the Clinton County Correctional Facility, where he was housed on a maximum security federal block. *Id.* ¶ 37. Goldhaber's

4

attorney subsequently filed a petition seeking the reinstatement of Goldhaber's bail and appellate rights, and requesting Goldhaber's return to Bedford County. *Id.* ¶ 40. In an order dated August 11, 2005, Judge George stated that the Court of Common Pleas lacked jurisdiction to extend the limitations period for the filing of an appeal, that the Court of Common Pleas lacked the authority to direct a warden of a county prison to house a particular inmate at a specific facility, and that "rational security concerns" articulated by Clark had provided a reasonable basis for the decision to house Goldhaber outside of Bedford County. *Id.* ¶¶ 41-42, 44. Judge George's order indicated that Goldhaber was eligible for work release subject to "the rules and regulations of the facility in which he [was] incarcerated." *Id.* ¶ 43.

Clark subsequently agreed to have Goldhaber returned to the Bedford County Correctional Institution as long as he was willing to sign a waiver protecting the Institution from liability for any injuries sustained by him during his incarceration. *Id.* ¶ 45. Nevertheless, Clark indicated that he had "changed his mind" after learning that Goldhaber would be eligible for work release. *Id.* The Board, which counted both Higgins and Clark as members, was complicit in Clark's actions. *Id.* ¶ 47. Bedford County Commissioner Steven Howsare, chairman of the Board, told Goldhaber's wife that he knew nothing about how to run a prison, and that such matters were left to the discretion of Clark. *Id.* ¶ 49.

Goldhaber's wife and attorney contacted the Cambria County Prison, which agreed to house Goldhaber. *Id.* ¶ 50. The Cambria County Prison was sufficiently close to Bedford County to enable Goldhaber to benefit from the work release program. *Id.* ¶¶ 50-51. In order to relieve Bedford County of the costs of his incarceration, Goldhaber prepaid Cambria County to house him. *Id.* ¶ 52. On September 1, 2005, with the affirmative agreement of Clark, Goldhaber was transported from Clinton County to the Cambria County Prison. *Id.* ¶ 53. Clark, who had insisted that Bedford County facilitate the move, accepted money from Goldhaber's wife to finance the undertaking. *Id.* Goldhaber's reason

for wanting to be housed in Cambria County was known to Judge George, Clark, Bowser and the Board. *Id.* ¶ 51.

Shortly after arriving in Cambria County, Goldhaber petitioned the Pennsylvania Court of Common Pleas of Cambria County for release to house arrest in order to facilitate his participation in the work release program. Doc. No. 28, pp. 16-17. On September 9, 2005, Judge Gerard Long granted Goldhaber's request for release to house arrest. *Id.* at 19. However, four days later, Higgins had Goldhaber removed from the Cambria County Prison. Doc. No. 42, ¶ 55. This action was taken pursuant to a conspiracy between Higgins, Clark, Bowser, Judge George and the Board. *Id.* Goldhaber was transferred back to the Bedford County Correctional Institution. *Id.*

On September 14, 2005, Judge Long vacated his order permitting Goldhaber to be released to house arrest. Doc. No. 28, p. 20. However, the new order made it clear that Goldhaber was permitted to participate in the work release program. *Id.* As far as the Court can tell, Judge Long originally believed that Goldhaber's initial sentence had permitted house arrest as opposed to formal incarceration. He apparently modified his order to permit work release, but not house arrest, after realizing that Goldhaber had not been permitted to serve his sentence under house arrest. Nevertheless, as the Court indicated in its prior memorandum opinion, there is nothing in the record which indicates that Goldhaber misled Judge Long into believing that the original sentence had permitted house arrest. *Goldhaber*, 576 F. Supp. 2d at 713-714. A copy of Judge George's order permitting work release was attached as an exhibit to Goldhaber's petition. Doc. No. 28, p. 18. Goldhaber referred to his application as a "Petition for Furlough to House Arrest To Facilitate Work Release." *Id.* at 16. This petition made it clear that while Goldhaber was requesting release to house arrest in order to facilitate his participation in the work release program, only work release itself had been permitted under the initial sentence. *Id.*

6

"Any misunderstanding as to what Judge George had permitted was due to Judge Long's apparent oversight, since it is clear from the record that Goldhaber did not employ a 'trick' to obtain house arrest." *Goldhaber*, 576 F. Supp. 2d at 713.

After arriving at the Bedford County Correctional Institution, Goldhaber spoke with Clark. Doc. No. 42, ¶ 56. Clark informed Goldhaber that he would be kept in solitary confinement for an indefinite period of time. *Id.* Clark further stated that he had never agreed to any form of work release or house arrest, and that Goldhaber would be shipped to a state correctional facility if he were to voice complaints about his housing arrangement. *Id.* Higgins subsequently gave statements to the media indicating that Judge George had been responsible for having Goldhaber moved to Bedford County. *Id.* ¶ 58. The situation allegedly resulted from a conspiracy between Judge George, Higgins, Clark and Bowser to effectively deny Goldhaber a meaningful opportunity to participate in the work release program. *Id.* ¶ 57.

At some later point, Goldhaber was moved from the Bedford County Correctional Institution to the Adams County Adult Correctional Complex, which is located in Gettysburg, Pennsylvania. *Id.* ¶ 59. Judge George serves as a member of the Adams County Prison Board. *Id.* Judge George and Clark were familiar with each other because Clark had previously worked as an officer at the Adams County Adult Correctional Complex. *Id.* Goldhaber avers that Judge George orchestrated his move to Adams County in order to retaliate against Goldhaber for filing a lawful petition in the Court of Common Pleas of Cambria County. *Id.* ¶ 60. Because of the distance between Adams County and Bedford County, Goldhaber was essentially precluded from participating in a work release program. *Id.* ¶ 63. Judge George allegedly instructed the officials at the Adams County Adult Correctional Complex to seek his personal approval before permitting Goldhaber to see his attorney or other visitors.

7

*Id.* Higgins and Clark allegedly gave statements to the media indicating that Judge George had played a role in deciding where Goldhaber would be housed. *Id.* ¶¶ 68-69. Since Bedford County was responsible for the cost of housing Goldhaber in these different facilities, the Board was fully aware of the fact that Goldhaber had been repeatedly moved from one prison to another. *Id.* ¶ 62. All of the communications between Judge George, Higgins, Clark, Bowser and the Board were conducted on an *ex parte* basis. *Id.* ¶ 70.

Wypijewski was the deputy warden at the Adams County Adult Correctional Complex. *Id.* ¶ 72. He placed Goldhaber into solitary confinement. *Id.* Judge George allegedly precluded Goldhaber from speaking with his attorney. *Id.* ¶ 73. On one occasion, after Goldhaber's attorney traveled from Bedford County to see him, she was abruptly told to leave the facility before being afforded the chance to speak with Goldhaber. *Id.* ¶ 75. Several of Goldhaber's grievances were ignored, and a birthday card from his three-year-old daughter was confiscated as an alleged security threat. *Id.* ¶ 76.

On November 4, 2005, Bowser arrived at the Adams County Adult Correctional Complex to have Goldhaber sign papers connected with his eventual release. *Id.* ¶ 82. Bowser allegedly stated that the papers would be expeditiously faxed to Judge George so that Goldhaber could be released at the expiration of his ninety-day minimum sentence. *Id.* Nevertheless, Bowser deliberately delayed the processing of the paperwork, thereby causing Goldhaber to remain incarcerated for an additional fifteen days. *Id.* ¶¶ 71, 81-82. This delay allegedly resulted from Judge George's desire to retaliate against Goldhaber for seeking release to house arrest while detained in Cambria County. *Id.* ¶ 71. Bowser allegedly told Goldhaber's wife that Judge George was reluctant to release Goldhaber because of the "trick" that he had pulled in Cambria County. *Id.* ¶ 80. Goldhaber avers that it was standard practice and custom for individuals incarcerated for the offense of driving after imbibing to participate in the

8

work release program, if permitted by the applicable sentencing orders, and to be released after the expiration of the minimum sentence. *Id.* ¶¶ 83-84. Goldhaber further alleges that Judge George sent Goldhaber's wife a threatening letter after she had requested transcripts of his trial for his attorney's use.[2] *Id.* ¶ 86.

Goldhaber contends that the actions of the Defendants were in violation of both the Petition Clause of the First Amendment (which applies to state actors by virtue of the Due Process Clause of the Fourteenth Amendment) and the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶ 90. He brings his claims pursuant to 42 U.S.C. § 1983. As required by the legal standards in addressing a motion to dismiss, the Court assumes all of Goldhaber's above allegations to be true, and now proceeds to address the motions which are the subject of this Memorandum Opinion.

## III. DISCUSSION

Three different motions are currently pending before the Court; each will be addressed separately. This Memorandum Opinion assumes familiarity with the Court's prior decision of September 28, 2007, and therefore will address only the specific issues that are relevant to the pending motions.

### A. Judge George's Motion to Dismiss

In support of his Motion to Dismiss, Judge George argues that he is entitled to absolute immunity or in the alternative qualified immunity, and that Goldhaber fails to state a claim upon which relief can be granted. Doc. No. 51. In the prior opinion, the Court concluded that Goldhaber properly

---

[2]The record contains a letter from Judge George to Mrs. Goldhaber dated September 29, 2005, indicating that requests for transcripts should not be made in the form of direct correspondence to a Pennsylvania trial court. Doc. No. 51-3, p. 2. The Court does not consider this letter to be a "threatening" letter.

alleged violations of the Petition Clause and the Equal Protection Clause.[3] *Goldhaber*, 576 F. Supp. 2d at 710-724. Nevertheless, in light of the vagueness of Goldhaber's allegations, the Court was unable to determine whether Judge George was entitled to absolute immunity.[4] *Id.* at 707-709. It is that question to which the Court now turns.

An immunity determination must be made by reference to the functions served by a particular immunity rather than by reference to the person claiming an entitlement to that immunity. *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). This functional approach ensures that an official's absolute immunity extends only to acts performed in accordance with his or her official duties. *Clinton v. Jones*, 520 U.S. 681, 693-695, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). In *Stump v. Sparkman*, the Supreme Court declared that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." 435 U.S. 349, 359, 98 S. Ct. 1099, 55 L. Ed.2d 331 (1978). "Judicial immunity is immunity from suit itself, not merely immunity from the ultimate assessment of damages." *Goldhaber*, 576 F. Supp. 2d at 703. "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).

Judicial immunity is inapplicable in two circumstances: first, where suit is based upon

---

[3] By its own terms, the Equal Protection Clause of the Fourteenth Amendment limits the actions of the States. U.S. CONST., amend.XIV, § 1. The Petition Clause is applicable to the states because of its incorporation within the Due Process Clause of the Fourteenth Amendment. *Tarpley v. Keistler*, 188 F.3d 788, 794, n. 4 (7th Cir. 1999).

[4] The language of 42 U.S.C. § 1983 does not expressly mention absolute immunity for judges acting in their judicial capacities. Nonetheless, the Supreme Court has always assumed that Congress would have expressly abolished the immunities available to state officials at common law within the statutory language if it had intended to do so. *Pierson v. Ray*, 386 U.S. 547, 554-555, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). Consequently, judges enjoy the same immunity in actions brought under § 1983 that they enjoyed at common law. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

nonjudicial actions, and second, where suit is based upon actions which, though judicial in nature, are taken in the complete absence of all jurisdiction. *Id.*; *Bradley v. Fisher*, 80 U.S. 335, 351-352, 20 L. Ed. 646 (1872). In its previous opinion in this case, the Court stated that if Judge George's actions in relation to Goldhaber were judicial in nature, then Judge George was entitled to absolute immunity, because Judge George had properly exercised adjudicatory jurisdiction in Goldhaber's criminal case. *Goldhaber*, 576 F. Supp. 2d at 705-706. Thus, the only issue left to be decided with respect to absolute immunity is whether Judge George's conduct, as alleged by Goldhaber, was judicial in nature. *Id.* at 709.

In his Second Amended Complaint, Goldhaber adds averments clarifying the nature of the actions allegedly taken by Judge George. Specifically, Goldhaber alleges that Judge George, a member of the Adams County Prison Board, instructed the officials at the Adams County Adult Correctional Complex to seek his personal approval before permitting Goldhaber to see his attorney or other visitors. Doc. No. 42, ¶ 63. Goldhaber further contends that Judge George directed Wypijewski to place him in solitary confinement. *Id.* ¶ 72. According to Goldhaber, Adams County officials told his attorney that they could only "supervise" Goldhaber "in his capacity as a prisoner" with the express permission of Judge George. *Id.* ¶ 80. Goldhaber alleges that Judge George, Higgins, Clark, Bowser and the Board conspired to ensure that he would not be able to benefit from Judge George's prior order permitting him to participate in the work release program. *Id.* ¶ 79.

Most of the cases examined by the Court concerning judicial immunity have presented easier factual scenarios. Judges are obviously immune from suits based on orders that they issue or on actions that they take to control their courtrooms during judicial proceedings. *See Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768-73 (3d Cir. 2000); *Figueroa v. Blackburn*, 208 F.3d 435, 440-445 (3d

11

Cir. 2000). A lack of formality does not deprive an action of its judicial character when a judge's entitlement to absolute immunity is at issue. *Stump*, 435 U.S. at 360, 98 S. Ct. at 1107, 55 L. Ed.2d at 342. On the other hand, it is clear that judges are not immune for non-judicial actions, which include personnel decisions and other administrative actions. *Forrester*, 484 U.S. at 227-30, 108 S. Ct. at 544-47, 98 L. Ed. 2d at 565-68; *Padgett v. Stein*, 406 F.Supp. 287, 305 (M.D. Pa. 1975). Similarly, the act of physically assaulting a litigant is categorically outside of the scope of one's judicial duties. *Archie v. Lanier*, 95 F.3d 438, 441 (6th Cir. 1996); *Ammons v. Baldwin*, 705 F.2d 1445, 1448 (5th Cir. 1983); *Gregory v. Thompson*, 500 F.2d 59, 63-65 (9th Cir. 1974); *Regan v. Price*, 33 Cal. Rptr. 3d 130, 133-135 (Cal.Ct. App. 2005).

The conduct allegedly engaged in by Judge George does not fall within per se judicial or nonjudicial categories of conduct. For this reason, a more detailed analysis is necessary.

As the Supreme Court explained in *Stump*, "the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362, 98 S. Ct. at 1106, 55 L. Ed.2d at 341. The actions allegedly taken by Judge George, while bearing some hallmarks of judicial action, are not easily characterized as actions "normally performed by a judge." After all, Judge George is not alleged to have amended his prior order to rescind the stated ability to participate in the work release program. Instead, Judge George is alleged to have conspired with others to ensure that Goldhaber was unable to avail himself of work release even though his own order had expressly permitted work release. *Goldhaber*, 576 F.Supp.2d at 707 ("Regarding the instant motion, while a conspiracy to corruptly *amend* the prior sentencing order would clearly fall within the scope of judicial immunity, it is not clear that a conspiracy to *subvert* that

12

order (while leaving it in effect) would do so as well.") (emphasis in original). He is also alleged to have subverted the orders of another judge by acting to ensure that Goldhaber was unable to reap the benefits of Judge Long's orders permitting house arrest and work release. *Id.*

Since there has been no discovery as to this issue, and the facts are unknown, the Court simply cannot determine whether the "expectations of the parties" would weigh in favor of or against a finding of judicial immunity.[5]

Ultimately, this is a close issue that will turn upon the facts of the situation. Assuming that Goldhaber's allegations are true, it is possible, if unlikely, that Judge George's actions will be found to be nonjudicial. Goldhaber has sufficiently alleged conduct of a nonjudicial nature to obtain some discovery with respect to Judge George's conduct. *See Thomas v. Independence Township*, 463 F.3d 285, 301 (3d Cir. 2006).

The Court's determination that Goldhaber may proceed with discovery is guided by a few basic principles. First, not every action taken by a judge in relation to a party before him or her can fairly be characterized as judicial. *Goldhaber*, 576 F. Supp.2d at 707. Second, where a judge engages in both judicial and nonjudicial conduct, only the judicial conduct is shielded by absolute immunity. *Lopez v. Vanderwater*, 620 F.2d 1229, 1235-1237 (7th Cir. 1980); *Harris v. Harvey*, 605 F.2d 330, 336 (7th Cir. 1979); *Crowe v. Lucas*, 595 F.2d 985, 989-990 (5th Cir. 1979); *Krueger v. Miller*, 489 F. Supp. 321, 327 (E.D. Tenn. 1978). Where a judge's pattern of conduct includes both judicial and nonjudicial actions, "the unprotected behavior must be separated from the shielded" behavior so that the judge is held liable only for his or her nonjudicial actions. *Moore v. Taylor*, 541 So.2d 378, 381 (La. Ct. App.

---

[5] If discovery reveals that the parties dealt with Judge George in his judicial capacity, that is certainly a factor that will weigh in favor of a determination that Judge George is entitled to absolute immunity. *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed.2d 331 (1978).

1989). "The doctrine of judicial immunity does not exist to make life easy for judges or to foster judicial peace of mind." *Brookings v. Clunk*, 389 F.3d 614, 624 (6th Cir. 2004) (Gibbons, J., dissenting). Instead, "[j]udicial immunity arose because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *Dennis v. Sparks*, 449 U.S. 24, 31, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980).

Because absolute immunity is "strong medicine," it is applicable only where the independence of the adjudicatory process is threatened by the potential imposition of personal liability upon an adjudicatory officer. *Forrester*, 484 U.S. at 230, 108 S. Ct. at 547, 98 L. Ed. 2d at 568. The potential for personal liability upon Judge George for the alleged extrajudicial conspiratorial conduct would not threaten the independence of the adjudicatory process, since the alleged conduct may not relate to the adjudicatory process itself.

The Court has not discovered any cases involving conduct directly analogous to that alleged by Goldhaber. However, the Court's analysis is guided in part by the decision of the United States District Court for the District of Nevada in *Carter v. Rupracht*, 532 F.Supp. 383 (D. Nev. 1981), and the decision of the United States District Court for the Northern District of Texas in *DeLeon v. City of Hamilton City*, Civil Action No. 02-1045, 2003 WL 21356791, 2003 U.S. Dist. LEXIS 9879 (N.D. Tex. June 10, 2003). In *Carter*, a justice of the peace was found to be immune for actions taken by him at a hearing involving the plaintiff, but not immune for threats allegedly made during a subsequent visit to the plaintiff's prison cell. *Carter*, 532 F.Supp. at 385. The District Court clearly indicated that the threats could not be fairly characterized as judicial conduct. *Id.*

14

*DeLeon* involved a female who alleged that prior to receiving an indigency hearing and appointed counsel, a municipal judge sent her to prison following an arraignment hearing for failing to pay fines in the amount of $2,400.00; additionally, she was forced to disrobe in front of male prison guards, and unjustifiably strip searched, solely for the purpose of sexual degradation and humiliation. *DeLeon*, 2003 WL 21356791, at *1-2, 2003 U.S. Dist. LEXIS 9879, at *2-5. The woman alleged that the municipal judge had been responsible for "various administrative decisions" at the jail in question. *DeLeon*, 2003 WL 21356791, at *3, 2003 U.S. Dist. LEXIS 9879, at *10. After holding that the municipal judge was absolutely immune from liability with respect to any actions taken by him during the arraignment hearing, the District Court specifically observed that the plaintiff's complaint contained no allegation that the municipal judge had made any administrative decisions directly affecting the terms or conditions of her incarceration. *Id.*

The reasoning in these two decisions implies that while an adjudicatory officer engages in judicial conduct when he or she sentences an individual to prison, he or she engages in nonjudicial conduct if he or she harasses the individual during the subsequent period of incarceration.

None of Goldhaber's claims against Judge George appear to be based on the criminal proceedings leading to his incarceration. Instead, Goldhaber's claims are based solely on an alleged extrajudicial conspiracy between Judge George and the other defendants to deny Goldhaber the benefits of the work release which had been permitted under orders issued by Judge George and Judge Long. Doc. No. 42, ¶¶ 55-86. The doctrine of absolute judicial immunity was not designed to facilitate or protect such alleged extrajudicial subterfuge. However, it is possible, and indeed this Court believes likely, that Judge George will be entitled to absolute immunity upon analysis of more complete facts that will be available at the summary judgment stage of this proceeding. The Court acknowledges,

15

though, that Goldhaber's allegations, which must be assumed to be true at this juncture, are sufficient to warrant the commencement of discovery with respect to Judge George's actions.[6] *Thomas*, 463 F.3d at 301. At the summary judgment stage, Goldhaber will be required to present evidence adduced during discovery that supports his claims. Furthermore, Judge George will be better able to present facts that support his defense of absolute immunity. *Id.* (recognizing that, subsequent to discovery, "summary judgment remains a useful tool for precluding insubstantial claims from proceeding to trial").

The next question is whether Judge George's Motion to Dismiss should be granted for reasons other than absolute immunity. Specifically, Judge George argues that he is entitled to qualified immunity, and that Goldhaber fails to state a claim upon which relief can be granted. Doc. No. 51, p. 3. In the prior opinion, the Court expressly reserved judgment as to whether Judge George was entitled to qualified immunity. *Goldhaber*, 576 F. Supp. 2d at 709. It was determined that Clark, Bowser and Wypijewski were not entitled to qualified immunity at the pleading stage. *Id.* at 715-16, 723-24. The reasoning behind that determination applies with equal force to Judge George. A reasonable person in the shoes of Judge George would have known that the Petition Clause afforded Goldhaber the right to file his petition in the Court of Common Pleas of Cambria County without fear of retaliation, and that the Equal Protection Clause afforded him the right to be free of irrational, arbitrary discrimination.[7] *Id.*

---

[6] The Court notes that Judge George would most likely be required to participate in discovery as a witness even if he were entitled to absolute immunity at this stage. *Dennis v. Sparks*, 449 U.S. 24, 30-32, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). While such participation is clearly "not of the same order of magnitude" as participation as a potentially liable defendant, *Dennis*, 449 U.S. at 31, the fact that Judge George would presumably be required to participate in discovery in any event weighs in favor of permitting discovery to go forward before making a definitive determination as to whether Judge George is entitled to absolute immunity in this case.

[7] As the Court has already made clear, it makes no difference whether the Court of Common Pleas of Cambria County actually had jurisdiction to entertain Goldhaber's petition, or whether Judge Long's orders permitting house arrest and work release were correct under Pennsylvania law. Only an objectively baseless petition is undeserving of Petition Clause protection. *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). The arguments raised by a party before a court are entitled to some degree of First Amendment protection. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 547-549, 121 S. Ct. 1043, 149 L. Ed. 2d 63 (2001). Because Goldhaber's petition was granted, it cannot be said that the petition was sufficiently baseless to be unworthy of First Amendment protection. *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 713 (W.D. Pa. 2007).

Because the Court has already explained why Clark, Bowser and Wypijewski are not entitled to qualified immunity at this stage, there is no need for further analysis of that issue with respect to Judge George. As noted earlier, however, these defendants all remain free to raise the defense of qualified immunity at a later stage in this litigation if discovery reveals that Goldhaber's allegations are lacking in evidentiary support, or a more detailed set of facts supports factors that favor immunity. *See Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996); *Goldhaber*, 576 F. Supp. 2d at 716, 723-724.

Judge George contends that Goldhaber cannot maintain an action against him under § 1983 because the allegations against him do not sufficiently allege that he was personally involved in Goldhaber's mistreatment. Doc. No. 51, pp. 9-11. In order to sue an individual under § 1983, a plaintiff must allege that the individual was personally involved in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This requirement prevents liability under § 1983 for one's official actions from collapsing into *respondeat superior* liability for the actions of others. *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). A complaint adequately alleges personal involvement "where it states the conduct, time, place, and persons responsible" for the alleged violation of a federally protected right. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Judge George argues that Goldhaber does not sufficiently allege personal involvement on his part to meet this standard, since all of the adverse treatment was allegedly perpetrated by Clark, Bowser and Wypijewski. Doc. No. 51, p. 9.

This argument is premised on the idea that Judge George, as an individual, had no legal

17

authority or practical ability to unilaterally control the Adams County Prison Board. *Id.* at 7. Under 61 PA. STAT. § 408(a)(1), a board such as the Adams County Prison Board consists of a judge, the district attorney, the sheriff, the controller, and the commissioners of the particular county in question. 61 PA. STAT. § 408(a)(1). Pennsylvania law clearly provides that all actions taken by a county prison board "must be by the approval of a majority of all the members of said board." 61 PA. STAT. § 409. Nevertheless, an important remaining question is whether Judge George was personally involved in extrajudicial actions relating to the terms of Goldhaber's imprisonment[8]

In *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S. Ct. 183, 66 L. Ed.2d 185 (1980), the Supreme Court made it clear that private parties who corruptly conspire with a state official to perpetrate an abuse of that official's legal authority act under color of state law for purposes of § 1983. Goldhaber does not have to allege that Judge George abused his own authority in order to defeat the pending Motion to Dismiss. Instead, he need only allege that Judge George conspired with those who had the legal authority (or practical ability) to infringe his constitutional rights, and that such other individuals took adverse actions against him in pursuance of the conspiracy. *Nat'l Collegiate Athletic Assoc. v. Tarkanian*, 488 U.S. 179, 197 n. 17, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988)("In contrast, the conspirators in *Dennis* became state actors when they formed the corrupt bargain with the judge, and remained so through completion of the conspiracy's objectives."). If Higgins, Clark, Bowser and

---

[8] If Judge George's actions relating to this issue are judicial in nature, absolute immunity would shield him from liability regardless of the legality of his actions. Nonetheless, the Second Amended Complaint alleges that Judge George was a participant in an extrajudicial conspiracy to violate Goldhaber's constitutional rights. Doc. No. 42, ¶ 55. This allegation of extrajudicial conduct is sufficient at this stage, barely, to defeat Judge George's strong defense of absolute immunity, regardless of whether Judge George's alleged actions were within his duties as a member of the Adams County Prison Board.

18

Wypijewski had conspired with Judge George to perpetrate judicial actions in derogation of Goldhaber's constitutional rights, they would have been liable under § 1983 even though Judge George would have been entitled to the defense of absolute immunity. *Dennis*, 449 U.S. at 27-32, 101 S. Ct. at 185-89, 66 L. Ed.2d at 188-92. The same general principle applies in this case except it is Judge George who is alleged to have conspired with Higgins, Clark, Bowser and Wypijewski to have them abuse their authority, which is not judicial authority. Goldhaber's allegations, which must be assumed to be true at this stage, could potentially encompass a scenario where Judge George was acting both under color of Pennsylvania law and in a nonjudicial capacity, thereby providing a basis for discovery to proceed with respect to the claims asserted against Judge George.[9]

Judge George also argues that Goldhaber cannot establish a violation of the Equal Protection Clause because he fails to allege facts distinct from those which support his Petition Clause claims. Doc. No. 51, pp. 22-24. In the prior opinion, the Court noted that Goldhaber was "not very specific with respect to his theory under the Equal Protection Clause." *Goldhaber*, 576 F. Supp. 2d at 721. Goldhaber appears to allege that the conspiracy against him predated his filing of the petition in the Court of Common Pleas of Cambria County. As the Court has previously observed, the only allegations relevant to Goldhaber's Petition Clause claims are those which postdated Judge Long's order permitting Goldhaber to serve his sentence under house arrest. *Id.* at 714 ("Although Goldhaber alleges that the

---

[9]At this stage, there is no "probability" requirement for Goldhaber to meet. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). The Court does not understand why Judge George devotes a significant portion of his brief to arguing that he could not have violated Goldhaber's constitutional rights because he had no authority to control the terms and conditions of Goldhaber's incarceration. Doc. No. 51, pp. 6-22. If Judge George believes that his limited authority as a member of the Adams County Prison Board renders it improbable that he could have had a significant influence on the terms and conditions of Goldhaber's incarceration, he remains free to raise this issue at the summary judgment stage. At this juncture, however, the Court is concerned only with the sufficiency of the allegations made by Goldhaber.

conspiracy against him originated before Judge Long's order of September 9, 2005, the only allegations relevant to his Petition Clause claims are those which postdated that order, since the relevant question is whether the Amended Complaint properly alleges retaliatory conduct on the part of the Defendants."). It is not entirely clear when Judge George is alleged to have become a part of the conspiracy. The Second Amended Complaint could be read to mean that Judge George joined the conspiracy *after* Goldhaber had already succeeded in obtaining the order from Judge Long permitting house arrest. Doc. No. 42, ¶ 55. Goldhaber's initial allegation of irrational discriminatory treatment appears to be directed solely at Higgins, Clark, Bowser and the Board. *Id.* ¶ 38. Of course, Judge George cannot be held liable for acts committed in furtherance of a preexisting conspiracy of which he was not yet a part.

However, the Court is not persuaded at this stage that the Equal Protection Clause claims against Judge George should be dismissed.[10] The Court is not convinced that an Equal Protection Clause claim cannot be based on the same facts as a Petition Clause claim. Admittedly, some courts appear to be of that opinion. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 439-440 (6th Cir. 2005). Nevertheless, most of the courts which have addressed this question have indicated only that the requirements of the Petition Clause often overlap with the requirements of the Equal Protection Clause, thereby obviating the need for independent analyses under the Equal Protection Clause. *Hill v. City of Scranton*, 411 F.3d 118, 125-126 (3d Cir. 2005); *San Filippo v. Bongiovanni*, 30 F.3d 424, 430 n. 6 (3d Cir. 1994); *Calderon-Garnier v. Sanchez-Ramos*, 439 F. Supp. 2d 229, 238 (D.P.R. 2006); *Perez v.*

---

[10]It is not entirely clear whether Goldhaber is asserting Equal Protection Clause claims against Judge George. In the prior opinion, the Court highlighted its displeasure with Goldhaber's "incoherent generalizations" and indicated that Goldhaber should set forth the specific legal bases for relief against each particular defendant. *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 731 (W.D.Pa. 2007). Regrettably, Goldhaber appears to have simply cut and pasted his prior averments into the Second Amended Complaint, along with additional averments concerning the alleged conduct of Judge George.

20

*Frank*, 433 F. Supp. 2d 955, 962 (W.D. Wis. 2006); *Acorn v. Bysiewicz*, 413 F. Supp. 2d 119, 140 (D.Conn. 2005). That is different from saying that one cannot simultaneously pursue claims under both constitutional provisions without alleging facts unique to the Equal Protection Clause claim. It cannot be doubted that one's rights under the Petition Clause can sometimes become intertwined with one's rights under the Equal Protection Clause. *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227, n. 3, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987); *Anderson v. Celebrezze*, 460 U.S. 780, 786 n. 7, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Pesek v. City of Brunswick*, 794 F. Supp. 768, 783 n. 6 (N.D.Ohio 1992). It does not follow that one's pursuit of a Petition Clause claim somehow forecloses her pursuit of a companion Equal Protection Clause claim.[11]

It is true that a "pure or generic retaliation claim" does not implicate the Equal Protection Clause. *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997). Thus, if a particular state official or entity indiscriminately retaliates against every prisoner who engages in activity protected under the Petition Clause, there can be no violation of the Equal Protection Clause, which concerns irrational *discrimination* (i.e., disparate treatment) among those similarly situated. On the other hand, where a

---

[11]The Supreme Court has explained that the generalized notion of "substantive due process" is inapplicable where a specific provision of the Bill of Rights governs a claim. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)(plurality opinion). Substantive due process analysis is unique because, in that area, "guideposts for responsible decisionmaking... are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). For this reason, where a specific provision of the Bill of Rights governs the scope of an asserted right, that provision supplies the "guideposts for responsible decisionmaking" that are generally unavailable where the more imprecise doctrine of "substantive due process" is invoked. There is no reason to assume, however, that Equal Protection Clause claims are foreclosed merely because the facts supporting such claims can also be used to establish violations of the Bill of Rights. The Petition Clause is applicable to the States not by its own terms, but solely because of its incorporation within the Due Process Clause of the Fourteenth Amendment. *United Brotherhood of Carpenters & Joiners of America v. Scott*, 463 U.S. 825, 831, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983). As the Supreme Court declared in *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S. Ct. 693, 98 L. Ed. 884 (1954), "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." The Court cannot accept Judge George's argument that Goldhaber's claims cannot rest on both the Petition Clause and the Equal Protection Clause, since doing so would be tantamount to saying that the protections afforded by these two constitutional provisions are mutually exclusive.

21

state official or entity irrationally or arbitrarily discriminates against a particular prisoner (or against a particular class of prisoners) in retaliation for engaging in protected petitioning activity under circumstances where other prisoners do not suffer retaliation for engaging in the same form of petitioning activity, the Equal Protection Clause is implicated. The Second Amended Complaint, when construed in the light most favorable to Goldhaber, alleges that Goldhaber was irrationally singled out for vindictive treatment that was not suffered by any other prisoner under similar circumstances. Doc. No. 42, ¶ 84. Having made such allegations, Goldhaber is entitled to discovery concerning his claims under the Equal Protection Clause. *Davis v. Lester*, 156 F.Supp.2d 588, 595 (W.D.Va. 2001). It would be improper for the Court to dismiss Goldhaber's Equal Protection Clause claims at the pleading stage solely because they appear to be based on the same facts as his Petition Clause claims. *Acevedo-Orama v. Rodriguez-Rivera*, 389 F. Supp. 2d 238, 243-244 (D.P.R. 2005).

Goldhaber apparently believes that he can pursue Equal Protection Clause claims against Judge George (and the other defendants) based on the delay of his release from prison after the expiration of his minimum sentence. Doc. No. 57, p. 16. However, the Court has already announced that such claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The prior opinion permitted Goldhaber's Equal Protection Clause claims to remain viable only to the extent that they were based on allegations unrelated to his confinement beyond the expiration of his minimum sentence. *Goldhaber*, 576 F. Supp. 2d at 723 ("As noted earlier, Goldhaber's claims related to his confinement beyond the expiration of his minimum sentence are barred by *Heck*. Nevertheless, the Amended Complaint alleges additional conduct on the part of the Defendants which indicates the presence of arbitrary, irrational discrimination against Goldhaber for the specific purpose of preventing

22

him from participating in the work release program."). Thus, the Court will grant Judge George's Motion to Dismiss to the extent that it seeks the dismissal of any claims stemming from the *duration* of Goldhaber's confinement. Doc. No. 50, ¶ 5. The Motion to Dismiss will be denied in all other respects. *Id.* ¶¶ 1-4. Although Goldhaber is entitled to engage in discovery relating to his claims, Judge George obviously remains free to again raise the defense of absolute immunity at the summary judgment stage if discovery reveals that his actions were judicial in nature. *See Behrens*, 516 U.S. at 309, 116 S. Ct. at 840, 133 L. Ed. 2d at 786.

## B.   The Motion to Dismiss/Motion to Strike Filed by Higgins, Clark, Bowser, Wypijewski and the Board

Higgins, Clark, Bowser, Wypijewski and the Board have filed a Motion to Dismiss, contending that Goldhaber's claims arising under Pennsylvania law cannot proceed.[12] Doc. No. 47, ¶¶ 9-15. In the prior opinion, the Court dismissed Goldhaber's state claims on the ground that he had failed to articulate a basis for liability under the law of Pennsylvania. *Goldhaber*, 576 F. Supp. 2d at 728. In his Second Amended Complaint, Goldhaber apparently alleges that Judge George and Higgins violated the Pennsylvania Rules of Professional Conduct, and that the Defendants (or some of them) committed the crime of official oppression.[13] Doc. No. 42, ¶¶ 92-93. The Rules of Professional Conduct do not create

---

[12] In his brief, Goldhaber refutes an argument that the Defendants do not make. He argues that he has sufficiently alleged a conspiracy actionable under § 1983. Doc. No. 52, pp. 21-25. The Defendants do not quarrel with that assertion. Instead, they merely seek the dismissal of Goldhaber's claims arising under Pennsylvania law. Doc. No. 47, ¶¶ 9-15. Goldhaber simply ignores the basis for the Defendants' motion and fails to offer an argument concerning the viability of his state claims. Doc. No. 52.

[13] The applicable Pennsylvania criminal statute defines the offense of official oppression as follows:
§ 5301. Official oppression
A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is

a private cause of action against attorneys who engage in unethical conduct. *Molitoris v. Woods*, 618 A.2d 985, 990 n. 5 (Pa. Super. Ct. 1992). In addition, courts have consistently held that Pennsylvania's official oppression statute, which criminalizes a defined category of conduct, does not create a cause of action maintainable by aggrieved private individuals. *Keefer v. Durkos*, 371 F. Supp. 2d 686, 696 n. 1 (W.D. Pa. 2005); *Agresta v. Goode*, 797 F. Supp. 399, 408-09 (E.D. Pa. 1992); *D'Errico v. DeFazio*, 763 A.2d 424, 430-31 (Pa. Super. Ct. 2000). Accordingly, the Court will dismiss Goldhaber's claims arising under Pennsylvania law.

The Defendants have also filed a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f), which authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P. 12(f)*. The portions of the Second Amended Complaint which the Defendants seek to strike generally deal with alleged improprieties on the part of Higgins. Doc. No. 42, ¶¶ 10-14, 16-17, 19-21, 23-24, 29, 32, 35, 87-88. A similar motion of this kind was previously denied as moot, with the implicit expectation that Goldhaber would omit any scandalous material from the more definite statement that he had been ordered to file. *Goldhaber*, 576 F. Supp. 2d at 729 ("It behooves him to focus his energy on the legal issues in this case, and to avoid focusing on the details of Higgins' alleged improprieties, throughout the course of this litigation."). The Court acknowledges that motions to strike are generally disfavored. *Great West Life Assurance Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993). That is why the Court gave

illegal, he:
(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or
(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.
18 PA. CONS. STAT. § 5301.

24

Goldhaber the opportunity to voluntarily clean up his averments. Unfortunately, Goldhaber failed to do so.

Having reviewed the Second Amended Complaint, the Court will strike paragraphs 10, 11, 12, 13, 14 and 20. Doc. No. 42, ¶¶ 10-14, 20. These paragraphs contain scandalous information which has no bearing on the issues presently before the Court.[14] The Motion to Strike will be denied with respect to paragraphs 6, 16, 17, 19, 21, 23, 24, 29, 32, 35, 87 and 88. *Id.* ¶¶ 6, 16-17, 19, 21, 23-24, 29, 32, 35, 87-88. Although Benton and Hershey are no longer parties to this case, their actions in relation to Goldhaber may still be relevant to the claims asserted against the remaining defendants. The alleged animosity between Higgins and Goldhaber lies at the heart of this case, and Goldhaber must be afforded an opportunity for discovery concerning Higgins' alleged motivation for treating him adversely. "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D.Pa. 2002). Eliminating the scandalous averments while retaining those relevant to Higgins' potential motives for seeking revenge against Goldhaber will strike the right balance between preventing undue prejudice to Higgins and permitting Goldhaber sufficient latitude to pursue his case.

## C. The Motion to Vacate Protective Order from Discovery and Case Management Filed by Goldhaber

On February 21, 2007, the Court stayed discovery in this case until all pending motions to dismiss had been adjudicated. Doc. No. 39. On July 22, 2008, Goldhaber filed a Motion to Vacate that

---

[14] The averments concerning Higgins' alleged misconduct were recounted in the prior opinion. *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 696-697 (W.D. Pa. 2007). The Court will not dignify them by repeating them further.

order, seeking the immediate commencement of discovery. Doc. No. 58. As of today, all pending motions have been dealt with. Consequently, there is no need for discovery to be stayed any longer. Goldhaber's Motion to Vacate will be granted.

## IV. CONCLUSION

When viewed in the light most favorable to Goldhaber, the allegations contained in the Second Amended Complaint sufficiently allege extrajudicial conduct on the part of Judge George to warrant the commencement of discovery with respect to such conduct. At this stage, the Court is simply not in possession of the necessary facts about the situation to rule out the possibility of nonjudicial conduct. Therefore, Judge George obviously remains free to raise the defense of absolute immunity at a later stage in this litigation; indeed, the Court expects that discovery may reveal facts that allow for a finding of judicial acts and the consequent immunity.

The Motion to Dismiss filed by Judge George will be granted with respect to any claims relating to Goldhaber's continued incarceration after the expiration of his minimum sentence and denied in all other respects. The Motion to Dismiss filed by Higgins, Clark, Bowser, Wypijewski and the Board will be granted with respect to any claims arising under Pennsylvania law, since Goldhaber fails to articulate a viable claim under the law of Pennsylvania. The Motion to Strike will be granted with respect to paragraphs 10, 11, 12, 13, 14 and 20 of the Second Amended Complaint, and denied with respect to paragraphs 6, 16, 17, 19, 21, 23, 24, 29, 32, 35, 87 and 88. Goldhaber's Motion to Vacate will be granted. The time has come for discovery in this case to commence. An appropriate order follows.

26

**AND NOW**, this 3rd day of March, 2009, this matter coming before the Court on the Motion to Dismiss/Motion to Strike filed by Defendants William Higgins, Brian Clark, Keith Bowser, Paul Wypijewski and the Bedford County Prison Board (Doc. No. 47), the Motion to Dismiss filed by Defendant Judge Michael George (Doc. No. 50), and the Motion to Vacate filed by Plaintiff Douglas Goldhaber (Doc. No. 58), IT IS HEREBY ORDERED that: (1) the Motion to Dismiss filed by Higgins, Clark, Bowser, Wypijewski and the Board (Doc. No. 47, ¶¶ 9-15) is **GRANTED** with respect to any claims arising under Pennsylvania law; (2) the Motion to Strike (Doc. No. 47, ¶¶ 16-26) is **GRANTED** with respect to paragraphs 10, 11, 12, 13, 14 and 20 of the Second Amended Complaint and **DENIED** with respect to paragraphs 6, 16, 17, 19, 21, 23, 24, 29, 32, 35, 87 and 88; (3) the Motion to Dismiss filed by Judge George is **GRANTED** with respect to any claims relating to Goldhaber's continued incarceration after the expiration of his minimum sentence (Doc. No. 50, ¶ 5) and **DENIED** in all other respects (Doc. No. 50, ¶¶ 1-4); and (4) the Motion to Vacate filed by Goldhaber (Doc. No. 58) is **GRANTED**. The parties are now free to commence discovery.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

27